UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MITCHELL FROST**,

    Plaintiff,

v.

**GREAT LAKES DEVELOPMENT PARTNERS, LLC,** an Ohio Limited Liability Company,

    Defendant.

Case No:

Hon.

---

**Gregory A. Jones (P75318)**
**GASIOREK MORGAN,**
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
P: 248-865-0001
F: 248-865-0002
gjones@work-lawyers.com

---

**PLAINITFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY**

PLAINTIFF, MITCHELL FROST, by and through is attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., hereby brings this Complaint against Defendant, GREAT LAKES DEVELOPMENT PARTNERS, LLC, and makes the following allegations:

## INTRODUCTION

1. The instant claims arise from breach of contracts for employment between the parties.

## PARTIES

2. Plaintiff, MICHELL FROST, (hereinafter, "FROST") is an individual with a principal place of residence in the City of Hillsdale, County of Hillsdale, State of Michigan.

3. Defendant, GREAT LAKES DEVELOPMENT PARTNERS, LLC (hereinafter, "GLDP"), is a Domestic Limited Liability Company, incorporated under the laws of the State of Ohio.

4. GLDP's principal place of business, including the location where its officers direct, control, and coordinate the corporation's activities, is located within the City of Akron, County of Summit, State of Ohio.

5. GLDP operates and maintains a marijuana cultivation facility at 118 Alvord Rd, Village of Camden, County of Hillsdale, State of Michigan, which served as FROST's principal place of employment with GLDP at all times relevant.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over the instant dispute pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds the sum

or value of $75,000 exclusive of interest and costs, and is between citizens of different states.

7. This Court has personal jurisdiction over Defendant GLDP because at all relevant times it has done business within the State of Michigan. Moreover, at all relevant times, GLDP employed FROST within the State of Michigan.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(B) as the district in which a substantial part of the events or omissions giving rise to the claim occurred.

## GENERAL ALLEGATIONS

## FIRST EMPLOYMENT AGREEMENT

9. On or about June 11, 2019, GLDP and FROST entered into a contract for employment, entitled EMPLOYMENT AGREEMENT (hereinafter, "FIRST AGREEMENT"), attached hereto as **Exhibit A.**

10. Pursuant to the FIRST AGREEMENT, GLDP agreed to employ FROST as a cultivation adviser for a term of one (1) year at GLDP's marijuana cultivation and processing facility, located in Camden, Michigan.

11. The FIRST AGREEMENT defined FROST's responsibilities as a cultivation adviser as follows:

> a. Oversee and support the initial build out of the Camden facility. The Cultivation Advisor is advising

the Camden cultivation teams with strategies related to medicinal plan performance, general plant nutrition, pest mitigation strategies and ensuring crop success.

b. Advises the cultivation team in Camden with recommendations for proper lighting, watering, temperature and humidity controls for plants

c. Work with General Manager of Galenas Michigan LLC's Camden location and implementing plans to improve overall cultivation practices, crop quality, and yield within the Camden, MI location.

d. Miscellaneous tasks assigned by Galenas Michigan LLC's Camden General Manager or Company executives. **[Exhibit A at ¶3, p.1]**

12. In exchange, GLDP agreed to compensate FROST as follows:

a. Base pay of $67,000/year upon execution of this document, through December 31, 2019, to be paid bi-weekly or as otherwise mutually agreed upon by Company and Employee;

b. $70,000/year commencing on January 1, 2020, so long as Employee successfully completes the duties identified in paragraph 3 and has not violated any company policies.

c. Paid Time Off of 15 days.

d. Health Insurance and Dental Insurance. **[Exhibit A at ¶4, p.2]**

13. The FIRST AGREEMENT provided the following terms and conditions, under which GLDP could terminate FROST's employment prior to the duration of the contract:

> The Company may discharge Employee for failure to comply with this agreement or otherwise perform his duties in a workmanlike and professional manner. Excessive tardiness, absenteeism, or other conduct that substantially conflicts with Company's existing policies and employee expectations shall constitute cause for discharge. Employee's employment shall also terminate upon his death; or his written notice of resignation given to the Company. Following termination of employment, all obligations under this agreement shall end except for the provisions of items 5 and 6, and any causes of action which may arise from the circumstances of the termination.
> **[Exhibit A at ¶7, p.2]**

14. FROST performed his duties and responsibilities under the FIRST AGREEMENT, commencing employment on or about June 11, 2019.

15. On or about March 31, 2020, GLDP informed FROST that he was being laid off, effective immediately.

16. GLDP unilaterally terminated the FIRST AGREEMENT without justification as provided by Paragraph 7 therein.

## **SECOND EMPLOYMENT AGREEMENT**

17. On or about May 31, 2021, GLDP and FROST entered into a second contract for employment, entitled EMPLOYMENT AGREEMENT (hereinafter, "SECOND AGREEMENT"), attached hereto as **Exhibit B**.

18. Pursuant to the SECOND AGREEMENT, GLDP agreed to employ FROST as a cultivation advisor for a term of two (2) years at GLDP's marijuana cultivation facility, located in Camden, Michigan.

19. The SECOND AGREEMENT defined FROST's responsibilities as Cultivation Advisor as follows:

> a. Oversee and support the initial build of the Camden facility. The Cultivation Advisor is advising the Camden cultivation teams with strategies related to medicinal plant performance, general plant nutrition, pest mitigation strategies and ensuring crop success.
>
> b. Advises the cultivation team in Camden with recommendations for proper lighting, watering, temperature, and humidity controls for plants
>
> c. Work with President and other Company executives as assigned to make recommendations and assist in creating and implementing plans to improve overall cultivation practices, crop quality, and yield within the Camden, MI location.
>
> d. Miscellaneous tasks assigned by Galenas Michigan LLC's president or other Company executives as assigned. **[Exhibit B at ¶3 pp.1-2]**

20. In exchange, GLDP agreed to compensate FROST as follows:

> a. Base pay of $79,500.00/year upon execution of this document, through December 31, 2021, to be paid bi-weekly or as otherwise mutually agreed upon by Company and Employee.
>
> b. $84,500/year commencing on January 1, 2022, so long as Employee successfully completes the

    duties identified in paragraph 3 and has not violated any company policies.

    c.  Paid Time Off of 15 days.

    d.  Health Insurance and Dental Insurance provided by the company. **[Exhibit B at ¶4 p.4]**

 21. The SECOND AGREEMENT further set forth conditions under which FROST's employment contract may be terminated.

 22. Specifically, the SECOND AGREEMENT provided that "If Employee voluntarily decides to leave the Company prior to the two-year term of employment referenced above, Company may require Employee to pay Company a lump sum amount of $5000.00." **[Exhibit B at ¶1, p.1]**

 23. The SECOND AGREEMENT further provided as follows:

> The Company may discharge Employee for failure to comply with this agreement or otherwise perform his duties in a workmanlike and professional manner. Excessive tardiness, absenteeism, or other conduct that substantially conflicts with Company's existing policies and employee expectations shall constitute cause for discharge. Employee's employment shall also terminate upon his death; or his written notice of resignation given to the Company. Following termination of employment, all obligations under this agreement shall end except for the provisions of items 5 and 6, and any causes of action which may arise from the circumstances of the termination. **[Exhibit A at ¶7, p.2]**

 24. FROST commenced employment pursuant to the AGREEMENT.

 25. On or about January 5, 2022, GLDP informed FROST that his employment was terminated.

26. GLDP unilaterally terminated the SECOND AGREEMENT without justification as provided by Paragraph 7 therein.

## COUNT I – <br> BREACH OF CONTRACT <br> FIRST AGREEMENT

27. Plaintiff repeats and realleges the allegations of the preceding paragraph as though more fully restated herein.

28. At all times relevant, FROST performed the duties set forth by the FIRST AGREEMENT.

29. GLDP owed the following duties, pursuant to the FIRST AGREEMENT, referenced above, to FROST, which include but are not limited to the following:

   a. Pay FROST $70,000.00 per year, beginning January 1, 2020 through June 11, 2020;

   b. Provide FROST with Health Insurance and Dental Insurance.

30. GLDP breached the FIRST AGREEMENT by unilaterally terminating the same, without justification, on or about March 31, 2020.

31. GLDP's failure to perform its obligations under the FIRST AGREEMENT from March 31, 2020 through June 11, 2020 constitutes a breach of contract.

32. As a direct and proximate result of GLDP's breach of the FIRST AGREEMENT, FROST suffered and sustained damages, including but not

limited to loss of income and the loss of the value of fringe benefits as the amount owed pursuant to the contract between the parties.

## COUNT II
## BREACH OF CONTRACT
## SECOND AGREEMENT

33. Plaintiff repeats and realleges the allegations of the preceding paragraph as though more fully restated herein.

34. At all times relevant, FROST performed the duties set forth by the SECOND AGREEMENT.

35. GLDP owed the following duties, pursuant to the SECOND AGREEMENT, referenced above, to FROST, which include but are not limited to the following:

   a. Pay FROST $84,500.00 per year, beginning January 1, 2022 through May 31, 2023;

   b. Provide FROST with Health Insurance and Dental Insurance.

36. GLDP breached the SECOND AGREEMENT by unilaterally terminating the same, without justification, on or about January 5, 2022.

37. GLDP's failure to perform its obligations under the SECOND AGREEMENT from January 5, 2022 through May 31, 2023 constitutes a breach of contract.

38. As a direct and proximate result of GLDP's breach of the SECOND AGREEMENT, FROST suffered and sustained damages, and will

continue to sustain damages into the future, including but not limited to loss of income and the loss of the value of fringe benefits as the amount owed pursuant to the contract between the parties.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, MITCHELL FROST, demands judgment against Defendant GREAT LAKES DEVELOPMENT PARTNERS, LLC, as follows:

A. Awarding Plaintiff all lost wages and restoring all fringe benefits, past (backpay) and future (frontpay), that he has or will suffer as a result of Defendant's breach of contract;

B. Awarding Plaintiff's reasonable attorney fees, costs, and interest; and

C. Awarding any other such relief as this Court deems just and proper.

Respectfully submitted,

GASIOREK MORGAN,

_____
Greg Jones (P75318)
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
(248) 865-0001

Dated:  March 10, 2022            gjones@work-lawyers.com

## **DEMAND FOR TRIAL BY JURY**

Plaintiff, MITCHELL FROST, by and through his attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., hereby demand a trial by jury in this cause.

                    Respectfully submitted,

                    GASIOREK MORGAN,

                    _____
                    Greg Jones (P75318)
                    Attorneys for Plaintiff
                    30500 Northwestern Hwy, Ste 425
                    Farmington Hills, MI 48334
                    (248) 865-0001
Dated:  March 10, 2022        gjones@work-lawyers.com